# William Schmidt et al., Appellees, v. William M. Johnson et al., Appellants.

## Gen. No. 18,093.

1. AMENDMENTS AND JEOFAILS—*when amendment of order appointing receiver proper.* Within the term of entry a misprision in an order appointing a receiver may properly be corrected.

2. RECEIVERSHIPS—*what approval of bond.* The mere signing by a judge of his name upon a bond without the word ''approved'' and without the entry of an order of approval, is a sufficient approval.

3. RECEIVERSHIPS—*when irregularity does not vitiate bond given upon appointment.* *Held,* that a material omission in the condition of a bond given upon the appointment of a receiver, will not affect the validity of the appointment as upon application the court would undoubtedly require a corrected bond to be given.

4. RECEIVERSHIPS—*appointment for solvent corporation.* A receiver of a solvent corporation should not be appointed in a suit brought by minority stockholders claiming mismanagement by the officers who were the majority stockholders, except in rare cases. *Held,* however, in this case, that the facts justified the appointment made.

5. RECEIVERSHIPS—*when appointment should not be without notice.* A receiver should not be appointed without notice unless there appear absolute necessity for so doing in order to protect the complainant's rights.

Bill in chancery. Interlocutory appeal from the Circuit Court of Cook county; the HON. C. M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed January 16, 1912.

McEWEN, WEISSENBACH, SHRIMSKI & MELOAN, for appellant, Riverview Park Company.

HELMER, MOULTON & WHITMAN and LLOYD C. WHITMAN, for appellees.

MR. JUSTICE CLARK delivered the opinion of the court.

A bill in chancery was filed by the appellees herein against the appellant, together with the Fidelity

Amusement Company, William M. Johnson, and others, seeking the appointment of a receiver of the appellant, Riverview Park Company, and also a receiver of the Fidelity Amusement Company, together with other relief against these and the other defendants. Upon application for the appointment of a receiver of the two corporations, the matter was referred to a master in chancery, who recommended that a receiver be appointed for each of the corporations. Thereupon an order was entered making such appointment, without notice to the defendants. The order was based entirely upon the bill of complaint sworn to by William Schmidt, one of the complainants, and no reference is made in it to the report of the master in chancery. The order appointing the receiver of the two corporations was entered October 10, 1911, and is in the following form:

"This cause coming on now upon the bill of complaint herein of said complainants, the affidavit of William Schmidt thereto presented and this day filed herein, and the motion of complainants for the appointment forthwith, and without notice to the defendants, or any of them, *pendente lite* of a receiver of the property and assets of the said Riverview Park Company and said Fidelity Amusement Company, and the court having considered and being fully advised in the premises.

"The court finds that it is necessary in order to preserve the assets and property of said Riverview Park Company that a receiver *pendente lite* be forthwith and without notice to defendants appointed herein with the usual powers of receivers in such cases, to take immediate possession of all the property, including all records, books of account, equitable interest, things in action and effects of every kind belonging to said Riverview Park Company and said Fidelity Amusement Company or either of them.

"It is further ordered that Howard Hews, of Chicago, said County, be, and he is hereby appointed receiver herein, with the usual rights and powers of receivers in chancery in such cases, to receive, take and hold until the further order of the court herein, possession of all the property, including all records, books of account, equitable interest, things in action and effects of every kind belonging to said Fidelity Amusement Company, upon his filing herein two bonds in the penal sum each of Seventy-five Hundred and no-100 Dollars with sufficient surety to be approved by the court, conditioned for the faithful performance of his duties as such receiver, provided that complainants shall first give bonds herein, one payable to said Riverview Park Company, the other to said Fidelity Amusement Company, both in the penal sum of Seventy-five Hundred and no-100 ($7,500.00) Dollars with good and sufficient security to be approved by the court, conditioned to pay all damages, including reasonable attorney's fees sustained by reason of the appointment and acts of such receiver in case the appointment of such receiver is revoked and set aside.

"And it is further ordered that upon filing and approval of said receiver's bond and said complainant's bonds, as aforesaid, the receiver herein proceed forthwith, to take possession of all the property, including all records, books of account, equitable interest, things in action and effects of every kind and hold the same subject to the further order of this court."

It will be noticed that this order while it recites that a receiver should be appointed for the Riverview Park Company and also the Fidelity Amusement Company, and later provides for a separate bond to be given by the receiver as such for each of the two companies, in one portion of it would seem to make him receiver merely of the Fidelity Amusement Company. On the following day, October 11th, another order was entered

in which it is recited that by inadvertence the words "Riverview Park Company and said" were omitted from the draft of the order as the order was actually made and directed by the court, and that these words should appear properly to express the order as actually directed and made by the court, and it was ordered that the record be amended so as to include these words and thus correctly recite the order as it was intended to be and as it actually was directed.

It is urged upon us that the order appointing the receiver of the Riverview Park Company should be set aside on the ground that, as entered on October 10th, it was inoperative as to that company. We must take judicial notice of the fact that October 11th was in the same term of court as October 10th. The court during the term had full power to correct its records so as to make the same speak the truth. In our opinion, therefore, no error was committed in making the correction.

The next objection is that the bonds were not approved by the court. The bonds, as shown by the abstract of record, bear upon them the words "C. M. Walker, Judge," underneath the words "Sealed and delivered in the presence of." It is asserted by the appellants that this does not constitute an approval. We cannot agree with them in this regard. In Illinois Central Railroad Company v. Johnson, 40 Ill. 35, it was held that where the court below, in granting an appeal, prescribes the penalty in which the bond shall be given, within what time it shall be filed, and the name of the security, and these requirements are complied with, the bond requires no further approval. In the case before us the penalty in each of the bonds was fixed, and the bonds themselves bear the signature of the judge. We do not think that the word "approved" need necessarily have been inserted before the judge's name. If the appellants were dissatisfied

·with the bonds a motion might have been made to require new ones and that course is still open to the appellants if they desire to avail themselves of it. There is no question, in our opinion, but that recovery could be had upon the bonds if it should appear later that the order appointing the receiver was improvidently or improperly granted, or if upon a full hearing the allegations of the bill were found to be unsupported by the evidence in the case, and the appointment of the receiver thereafter set aside for that reason. The bonds to which we have just referred are bonds given by the complainants to the two corporations by virtue of the provisions of paragraph 53 of chapter 23 of the Revised Statutes, which state that bond shall be given to the adverse party in such penalty as the court or judge may order, and with security to be approved by the court or judge, conditioned to pay all damages, including reasonable attorney's fees, sustained by reason of the appointment and acts of the receiver, in case the appointment of such receiver is revoked or set aside. It is to be noted that two bonds were made by the receiver, one as receiver of the Riverview Park Company and one as receiver of the Fidelity Amusement Company, and these bonds were approved on October 10th and filed on that day. It is quite evident, in our opinion, that the chancellor by placing his name upon the two bonds given by the complainants intended thereby to approve the same, and did thereby so approve them.

In the case of the bond issued by the complainants in the matter of the appointment of a receiver of the Fidelity Amusement Company, the words "Riverview Park Company" appear in the condition instead of "Fidelity Amusement Company;" and it is claimed that therefore no bond was given by the complainants for the protection of the Fidelity Amusement Company. The bond was approved by the court, and it is

quite apparent from the other provisions that it was intended to indemnify the Fidelity Amusement Company. It recites the filing of the bill of complaint against the Fidelity Amusement Company and others, praying among other things for the appointment of a receiver of that company. We do not think the informality of the bond should cause a reversal of the order appointing the receiver of the Fidelity Amusement Company, if upon examination of the whole case, as made by the bill of complaint, the appointment of such receiver is found to have been justified. The court could, and undoubtedly will, if called upon to do so by the Fidelity Amusement Company, require the complainants to file another bond in which the condition is correctly expressed.

We come next to consider whether the court was justified by the allegations of the bill of complaint in appointing a receiver of each of the two companies without notice. From the bill of complaint it would appear that the four appellees, who were the complainants below, were the holders of 355 out of a total of 1,000 shares of the capital stock of the Riverview Park Company; that the remainder of such stock, namely 645 shares, was held by the three individual defendants, Paul W. Cooper, Nicholas P. Valerius and William M. Johnson; that the three persons mentioned, together with two of the complainants, namely William Schmidt and George Goldmann, constituted the board of directors of that company; that Cooper was president and general managing officer of the company, Valerius its vice-president, and Johnson its secretary; that these three defendants since September 15, 1905, have controlled and voted their stock as a single block of stock owned by one person, and it is asserted on information and belief, that they will continue in the future to so vote it; that in 1906 at the instance and suggestion of these three defendants, a

resolution was passed by the directors of the company creating an executive committee of the board of directors, consisting of these three defendants, and that since October, 1905, the three defendants have been in control of and managing all of the business affairs of the Park Company; that they own and control a majority of the capital stock, control the election of a majority of the directors, and through them the election of all the officers; that in addition to its business of constructing and operating an amusement park, the Park Company furnishes the public for a fee paid by them with amusements in the character of riding devices, etc., displays and exhibitions of various character and description; that some of these amusement features are provided directly by the Park Company, but a large part of them by third parties, known as concessionaires, upon property adjoining and opening only upon the grounds of the Park Company; that these concessionaires charge the public an additional fee; that the Park Company secures its revenue in part from the exaction and receipt from the concessionaires, in return for the privileges in operating their amusement features. This is paid either in lump sums or by percentages of the receipts of the concessionaires.

The bill then charges that on or about September 15, 1905, the defendants, Cooper, Valerius and Johnson, entered into an unlawful conspiracy for the purpose of depriving the stockholders of the Riverview Park Company other than themselves of their right as such stockholders, by fraudulently and unlawfully exploiting the Park Company and converting its funds and assets, etc., to their own use, and also to acquire and convert to their own use the good will of the business of the Park Company.

The bill then proceeds to give in detail the acts of the said three defendants claimed to have been com-

mitted in pursuance of the alleged conspiracy.

Among other things, it is stated that one of the concessionaires, the Monitor and Merrimac Company, made an offer to the defendants to pay the Park Company as compensation for this concession 35 or 40% of the gross receipts of the concessionaire in the operation of the concession, but that the defendants refused to accept this offer and made a counter proposition whereby the Monitor and Merrimac Company was to pay the Park Company 10% of its receipts, and in addition thereto, after it had been paid its original investment, the Monitor and Merrimac Company should pay to the said three defendants one-half of the net profits realized from the operation of the concession; that thereafter the said defendants made an arrangement with the Monitor and Merrimac Company whereby that company delivered to them a one half interest in the assets and profits; that while the agreement was that this payment should be made to the Park Company, as a matter of fact the defendants converted this one half interest to their own use, thus cheating and defrauding the Park Company. The bill further alleges that for a period of four years prior to the filing of the bill the profits of the Monitor and Merrimac Company were more than $150,000, and that one half of this amount was turned over to the defendants, who concealed from the complainants their acts in this regard.

A similar state of facts is alleged to have existed in respect to a company known as the Creation Company, whereby it is alleged the defendants received $40,000 individually which should have been paid over to the Park Company.

The charge is made that the three defendants named negotiated with a man named Browning for the operation upon the grounds of the Park Company of certain miniature railways; that a contract was entered

into in the name of the Park Company with Browning, whereby the Park Company was to receive 25% of the gross receipts from the operation of the railways; but that the said defendants, simultaneously with entering into this contract with Browning, entered into a second contract with Browning whereby he agreed to pay them, the said defendants, one half of the profits realized by him; that the amount received by the said defendants from this source, which properly belongs to the Park Company, was $12,500; that contracts were also made by the three defendants named on behalf of the Park Company with a firm known as Phelps and Cloher, whereby that firm was given the privilege of operating a large number of minor concessions; that the Park Company should receive $500 from each concession, but that Phelps and Cloher should divide with the defendants the net profits resulting from the operation of these concessions. The bill alleges that the said defendants in this way realized prior to the filing of the bill upwards of $40,000, which they have retained and used for their own benefit.

The bill further alleges that in order to enhance their illegal gains, the defendants Johnson, Cooper and Valerius during the year 1911 and prior thereto caused a large number of free passes to the Park Company's grounds to be issued; that thereby the income of the Park Company was lessened, and the illegal profits acquired by the defendants increased because of the large percentage obtained by the said three defendants from the concessionaires.

The bill further alleges that in pursuance of the alleged conspiracy of the defendants, Cooper, Valerius and Johnson, there was caused to be incorporated the defendant Fidelity Amusement Company under the laws of the State of Arizona, with a nominal capital of $100,000; that in or about February, 1908, the three defendants named caused the corporation to qualify,

or pretendedly qualify, under the laws of the State of Illinois; that the objects and purposes for which it so qualified were to acquire, construct, lease, own and operate amusement parks, and to acquire, build, license, own, operate, sell and deal generally in amusement devices; that all the directorships and offices of the Fidelity Amusement Company are held by the three named defendants and Charles R. Francis, a lawyer; that Charles R. Francis, as complainants are informed and believe, is not interested in the Fidelity Amusement Company but is simply acting for the three defendants, Cooper, Valerius and Johnson; that all of the capital stock stands in the names of the said three defendants, unless it be that a small part of it stands in the name of Francis, who, it is alleged, is acting for the three said defendants. The bill alleges that said defendant Fidelity Amusement Company has no property or assets other than moneys or property, or proceeds of money or property, fraudulently derived by the three defendants pursuant to the conspiracy from the Riverview Park Company, and that the three defendants, under the name of the Fidelity Amusement Company have converted and appropriated to their use and benefit the property so held in the name of the Amusement Company; that the Amusement Company began doing business in Chicago about January 23, 1907, under the complete control and domination of the three defendants.

The bill then avers that the three defendants received illegally and fraudulently and converted to their own use a large amount of money realized from the operation of a riding device known as the "Aerostat"; that this device cost about $6,500, and was operated by the three defendants in 1906; that they made a nominal contract with the Park Company whereby the Park Company was to receive 10% of the gross receipts; that the net proceeds from said device during

the year 1906, so fraudulently converted to their own use by the three defendants, was not less than $7,000; that in April, 1907, the three defendants represented to the other directors of the Park Company that the "Aerostat" had been constructed at an actual cost of $10,500, and the Park Company at that time purchased the device from the Fidelity Amusement Company at a price fixed at $10,500, which the bill alleges the three defendants thereupon fraudulently converted to their own use.

The charge is made in the bill that by similar deceit and conspiracy the defendants realized from a riding device known as the "Chutes" a large amount of money, and arranged an ostensible purchase by the Park Company from the Amusement Company at a sum of $45,000 the device which had cost not to exceed $25,000; that in the year 1907 the defendants realized from the operation of the Chutes a sum not less than $32,000, which they fraudulently converted to their own use.

Similar conspiracy and deceit are alleged with reference to a riding device known as the "Velvet Coaster", and another known as the "Thousand Islands". From the former device the three defendants are alleged to have appropriated to themselves not less than $25,000 per season for four years, and in the latter not less than $10,000 for each of the four years.

It is also alleged that the defendant Frank Johnson has realized improperly out of what is known as the "soft drink privilege" a profit of more than $100,000, which properly belonged to the Park Company but which pursuant to a conspiracy among the three defendants named, the said defendant Johnson has converted to his own use.

The bill alleges that the complainants did not learn until July 1, 1911, of the conspiracy or wrongs which are alleged in the bill to have been perpetrated by

the said three defendants, who used the Fidelity Amusement Company as a shield to cover the various illegal transactions.

The bill then alleges that out of the moneys so fraudulently claimed to have been taken from the defendant, Riverview Park Company, by the three defendants, Cooper, Valerius and Johnson, real estate had been purchased, and that title to a portion of same stands in the name of defendant, Joseph B. Cloher; another portion in the name of the defendant, Helen J. Cooper; another portion in the name of Tillie Valerius, the wife of the defendant, Nicholas P. Valerius; some in the name of the defendant, Zoe E. Johnson, the wife of the defendant, William M. Johnson; and some in the name of Mary Frawley; that title to none of the real estate was taken in the name of any of the three defendants, Cooper, Valerius and Johnson.

The bill then alleges that the title to 35 acres of land stands in the name of the Fidelity Amusement Company, all of which it is alleged was purchased with the money and proceeds of property of the Park Company fraudulently converted by the three defendants to their own use; that this 35 acres has been acquired pursuant to the conspiracy; that upon it are located many of the large amusement features operated in connection with the park; that the land is so located that it almost surrounds the real estate upon which the principal portion of the amusement features of the Park Company are located; that the Park Company has a written lease which expires December 31, 1914; that with the exception of three and one half acres the Park Company has no lease of any portion of the 35 acres standing in the name of the Fidelity Amusement Company; that the use of the 35 acres is necessary to the successful financial operation of the park, and that by depriving the Park Company of the use of certain

portions of the 35 acres the three named defendants can at any time seriously cripple the financial operation of the Park Company's affairs. The bill charges that the purpose of placing the title to the 35 acres in the Fidelity Amusement Company was to convert to the use of the three defendants the good will of the Park Company, and, as an incident and means to that end to put the Fidelity Amusement Company in a position to gain control for amusement park purposes of the immediate neighborhood of the park, and to use such control to secure to the Amusement Company the advantages in respect to the operation of an amusement park now held by the Park Company.

The bill further alleges that the three defendants have so manipulated the affairs of the Park Company that during the season of 1911 its business showed a loss of upwards of $3,000, although the general attendance was larger than during any season of the existence of the park; that because of the issuance of so many free passes the actual gate receipts were many thousands of dollars less than for any preceding year.

The bill further alleges that of the 645 shares of the capital stock of the Park Company now owned by the three defendants, or some of them, 418 shares were purchased almost, if not entirely, with the moneys fraudulently taken by the three defendants, denominated conspirators, from the moneys and properties belonging to the Riverview Park Company, as theretofore set forth; and that the real estate standing in the name of the Fidelity Amusement Company or the other defendants, has, so far as it has ever been paid for, been paid for with the funds of the Riverview Park Company so fraudulently converted to the use of the three defendants; that in equity the property standing in the name of the Fidelity Amusement Company and in

the names of the other defendants heretofore referred to belongs to the Riverview Park Company.

Other charges of conspiracy and fraud are made, but we think the contents of the bill have been sufficiently detailed to show their general character.

For the purpose of this appeal the allegations of the bill must be taken as confessed by the appellants. We agree fully with appellants that a receiver of a solvent corporation should not be appointed in a suit brought by minority stockholders claiming mismanagement by the officers, who are the majority stockholders, except in rare cases. We also agree with them that a receiver should not be appointed without notice, unless there appear absolute necessity for so doing in order to protect the complainants' rights. The question then to be determined is whether the evidence in the case before us indicates such an exceptional state of things with respect to the two corporations made defendants as warranted the Circuit Court in appointing a receiver, having in view this conceded statement of the rule which should have governed its action.

In our opinion the allegations of the bill, which in their consideration of this appeal must, as heretofore stated, be taken to be true, disclose the utmost disregard by the three defendants, holding a majority of the stock of the Riverview Park Company, of the rights of their fellow stockholders. These three men are shown to have had absolute control over the affairs of the company, by reason of their ownership of a majority of the stock, and the fact that they, in their own persons, formed a majority of the board of directors, composed the executive committee of the board of directors, and were the managing officers of the corporation.

In exhaustive examination of reported cases of a similar character, in which receivers have been appointed, we have been unable to find any wherein the

facts seemed to warrant more clearly the interposition of a court of equity than the one now under consideration.

In so far as the defendant, Fidelity Amusement Company, is concerned, it would appear that that corporation was incorporated under a foreign law by the three defendants, Cooper, Valerius and Johnson, and caused to be empowered by them with the right to do business in this state, merely for the purpose of forming a vehicle by which their fraudulent and unlawful acts might be carried. It is a corporation formed under the laws of Arizona, apparently with no expectation that it would carry on business in any other place than the city of Chicago.

The appointment of a receiver of these two corporations is not based upon section 25 of the Corporation Act, and the purpose of the bill is not for the winding up of the two corporations, but for their management and control. The appointment of a receiver if justifiable, therefore, must be justified under the general power of a court of equity to grant relief under the circumstances. The rules which should govern a court of equity we think are properly stated in 1 Morawetz on Private Corporations, 2nd ed., section 281, which is as follows:

"The courts will not interfere unnecessarily with the Management of a Corporation.—A court of equity will grant all relief to a shareholder which the nature of his case may require. But it has always been a settled principle, that no interference with the management of a corporation can be justified, unless such interference be absolutely necessary to the attainment of justice.

"The reason of this rule is obvious. The officers of a corporation are generally elected by vote of the shareholders. Every shareholder has a voice in their appointment, and may insist that they shall represent the corporation when duly appointed. If an officer is guilty of a breach of duty, he may in many cases be re-

moved by act of the corporation; but no minority of the shareholders have any authority to restrain his action, or remove him and appoint another officer in his place. Nor can a court of chancery interfere at the suit of a portion of the shareholders and remove an offending officer, or even enjoin him generally from acting for the corporation, unless this be essential to the protection of the corporate rights; as, for example, where the directors have conspired to defraud the corporation, or have otherwise shown themselves to be totally unfit to be entrusted any longer with the management of the company's affairs. The court must ordinarily confine its remedy to the redress of the specific wrongs which have been charged.

"The appointment of a receiver or manager of a *solvent* corporation must therefore be considered a strong remedy, which can be justified only in a strong case; and the management of the corporation should be restored to its shareholders as soon as this can be done with safety. Thus, in Featherstone v. Cooke, Vice-Chancellor Maline appointed a receiver for a company because disputes had arisen between its managing agents, which caused a stoppage of the business and threatened to entail great loss upon the shareholders; but he discharged the receiver as soon as a general meeting of the shareholders had been called and new officers had been chosen." (Featherstone v. Cooke, L. R. 16 Eq. 298.)

See also Stevens v. Davidson, 18 Gratt. 819; Waterbury v. Merchants' Union Exp. Co., 50 Barb. 158; s. c. 3 Abb. Pr. N. S. 163; Belmont v. Erie Ry. Co., 52 Barb. 637; Lawrence v. Greenwich Fire Ins. Co., 1 Paige, 587; Merrifield v. Burrows, 153 Ill. App. 523.

We think the facts as disclosed by the bill warranted the master in chancery in making his recommendation that a receiver of the property of each of the two corporations be appointed, and that the court was justified, following this recommendation, in appointing a receiver. The order of the Circuit Court is affirmed.

*Order affirmed.*