**Fred A. Burton, Appellee, v. Freeman Coal Mining Company, Appellant.**

Opinión filed July 26, 1929. Additional opinion filed September 11, 1929.

CHARLES E. FEIRICH, for appellant.

J. ROY BROWNING, for appellee.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

This is an appeal from an interlocutory order appointing a receiver. Appellee filed his bill against appellant and twelve other persons in which he averred

that he is the owner of 265.96 shares of the capital stock of appellant and that he claims to be the owner of all other outstanding shares; that appellant's authorized capital is $250,000, divided into 2,500 shares, of which 531.93 shares are held in the treasury of the company; that of the shares in force the McElvains claim to be the owners of 1,702.11 shares; that appellant owns a mining property in Williamson county and that mining operation ceased on February 20, 1929. The bill avers that since January 20, 1922, appellee has been in complete control of appellant and has had complete control and charge of the management of the company; that he had litigation in the superior court of Cook county with the McElvains and a decree was rendered requiring him to deliver the shares claimed by the McElvains to them; that he appealed to the Supreme Court and that court sustained the decree and held that all moneys of appellant expended by appellee during the time he had been in control of the company which were wrongfully expended, including the wages of miners and running expenses of the mine, should be repaid by appellee to appellant; that because of that holding appellee refused to pay the miners' wages and the mine was closed on February 20, 1929; that more than 400 laborers were engaged in the mine and about $60,000 were due them for wages at that time; that 11 of the miners, who were made defendants to the bill, served a written demand for their wages and brought suit before a justice of the peace and that other miners threatened to do likewise; that such suits and threatened suits would injure and impair the value of the mine.

The bill avers that on February 20, 1929, the miners went out on strike; that the mine is now idle and that appellee believes that some of the miners will, in revenge and retaliation, destroy or seriously injure the mine unless a receiver is appointed; that the Supreme

Court held that appellee's control and operation of the mine was unlawful and not binding upon the McElvains; that as to them appellee did not represent appellant and that as to appellant and the McElvains appellee was a trespasser; that by reason of that decision appellee is not willing to further control the property of the company and that the McElvains had refused to take possession and appellant is without any one in charge or control of its property, so that its property and business and credit are in imminent danger; that the value of appellee's stock will be irretrievably lost unless the court appoint a receiver to take care of, manage and protect its property, business and affairs until the stockholders can meet and elect officers.

The bill avers that it is imperative that the receiver be appointed forthwith and that the injunction be granted restraining the 11 miners named as defendants from prosecuting their suits. The bill prays for a temporary injunction against the 11 miners and that on the final hearing such injunction be made permanent; that the court forthwith appoint a receiver of the Freeman Coal Mining Company and for general relief.

The court granted the injunction and appointed a receiver without notice to any of the defendants.

It will be observed that there is no averment that appellant is insolvent. The main purpose of the bill seems to be to prevent bona fide creditors from prosecuting their claims to judgment and perhaps, incidentally, to place the corporation in the hands of a receiver friendly to appellee. It will also be observed that the prayer of the bill is for the appointment of a receiver for appellant and not simply to take charge of the mine.

Courts of chancery can appoint receivers of corporations only when expressly authorized by statute, and they have no general power to make such appointments. They are particularly disinclined to appoint a

receiver for misconduct or mismanagement of a corporation, or for the purpose of merely preserving its assets, where the application is made by stockholders. While a stockholder may invoke the power of equity to appoint a receiver where the corporation is fraudulently mismanaged by its officers, the stockholders cannot invoke the jurisdiction of the court to take charge of all the company assets by a receiver and thus defeat action by the creditors under section 54 of the General Corporation Act, Cahill's St. ch. 32, ¶ 54. *Blanchard Bro. & Lane v. Gay Co.,* 289 Ill. 413; *People v. Weigley,* 155 Ill. 491.

We are of the opinion that the averments of the bill in this case were wholly insufficient to give the court jurisdiction to appoint a receiver. The order appointing a receiver is null and void. The decree is reversed and the cause remanded.

*Reversed and remanded.*

Additional Opinion on Petition for Rehearing.

Appellee says that what he wants is to have the assets of appellant placed in safe hands until his controversy with the McElvains regarding the ownership of the remainder of the stock is settled by the Supreme Court. He insists that the averments of his bill are clearly sufficient to entitle him to the appointment of a receiver under the following cases: *Merrifield v. Burrows,* 153 Ill. App. 523; *Schmidt v. Johnson,* 166 Ill. App. 623; *Boyle v. Superior Court of City & County of San Francisco,* 176 Cal. 671, 170 Pac. 1140, and *In re New Jersey Refrigerating Co.,* 95 N. J. Eq. 215. In those cases it was made to appear that the directors were deadlocked and that no business could be transacted; that the directors and officers were unable to function, etc. There is no similarity between the averments of appellee's bill and the bills in the cases above cited.

Appellee's bill does not charge the insolvency of appellant or fraud and mismanagement on the part of any one other than the averment that the Supreme Court had held that appellee was a trespasser and guilty of unlawful acts. There is no averment that appellant is unable to function as a corporation because its board of directors is deadlocked, or for any other reason. There is an averment that since the decision of the Supreme Court he requested the McElvains to take possession of appellant's property and that they refused to do so. There is no showing that the McElvains were directors or officers of the corporation. From all that appears in the bill, appellant may have a competent board of directors who are in every way capable of managing the corporate affairs better than the court could through a receiver.

The latest utterance of our Supreme Court on this subject is as follows: "In the bill under which the plaintiff in error was appointed receiver it did not appear that the corporation was insolvent or that its affairs were being mismanaged. It did appear that it was near insolvency, but it did not appear that the court or its receiver could manage the corporate affairs better than its officers, and the courts do not appoint receivers for the purpose of merely preserving the assets of the corporation where the application is made by stockholders, for the reason that the sovereign does not furnish public agencies for the carrying on of private enterprises." *Steenrod v. Gross Co.*, 334 Ill. 362–369. It seems to us that appellee's contention is fully answered by the above quotation and his petition for a rehearing is denied. This appeal brought before us nothing but the order of the court appointing a receiver and as that order is null and void there is no cause to be remanded. The opinion heretofore filed is modified by striking out the remanding order and appellant's petition for rehearing is denied.

*Reversed.*